**J.B. FLOYD, et al., Plaintiffs,**

v.

**Robert E. RUBIN, Secretary of the Treasury, et al., Defendants.**

**Civil Action No. 98–670(SS).**

United States District Court, District of Columbia.

March 31, 1999.

Robert Edward Deso, Jr., Deso, Thomas, Spevack, Weitzman & Rost, P.C., Washington, DC, for J.B. Floyd, Roy D. Nedrow, Kenneth D. Hansen, Philip D. Cox, Robert Oberholtzer, James G. Posey, Edward E. Moore, John P. Gillooly, Edward Creamer, Ronald Siemanski, Kenneth Baker, William Gleason, Richard Foree, Charles Rochner, Carl Smith, John C. Krall, J.D. Kivett, Leroy J. Wagner, Robert J. Finan, II, John McLeny, John Gannon, Raymond J. Yonkus, Jr., Jon M. Warrington, Jesse F. McGaha, Kenneth M. Donohue, Branch Walton, Charles R. Owens, Franz Schwarm, P. Hamilton Brown, Michael P. Stephens, Philip M. Robertson, Bobby Garrett, Thomas C. McDade, William Stuckey, John Kish, John Simon, Jr., Mike G. Musgrave, Mark C. Brown, Plaintiffs.

Susan Kay Rudy, U.S. Department of Justice, Washington, DC, Aaron W. Kwann, U.S. Department of Justice, Civil Division, Federal, Programs Branch, Washington, DC, Aaron K. Kann, U.S. Department of Justice, Civil Division, Washington, DC, for Robert E. Rubin, federal defendant.

Marceline D. Alexander, Office of Corporation Counsel, D.C., Washington, DC, for District of Columbia, defendant.

Warren L. Dennis, Proskauer, Rose, Goetz & Mendelsohn, L.L.P., Washington, DC, for Steering Committee of Post–Leap Special Agents of the U.S. Secrets Service, amicus.

## *MEMORANDUM OPINION*

SPORKIN, District Judge.

This matter comes before the Court on cross-motions for summary judgment. Plaintiffs are approximately 550 criminal investigators of the U.S. Secret Service ("Secret Service") who retired before October 30, 1994. Although plaintiffs were federal employees, their retirement benefits are governed by the District of Columbia Police and Firefighters Retirement and Disability Act ("DCRA"), D.C.Code §§ 4–601 through 4–634. Defendant District of Columbia administers plaintiffs' retirement benefits, which are funded by the federal defendants. Amici represent some 1200 active duty or retired special agents of the Secret Service who are participants in the DCRA. The retired agents represented by amici retired on or after October 30, 1994.[1]

Plaintiffs seek an increase in their annuity payments commensurate with the 25 percent increase in salary that current Secret Service employees receive under the Law Enforcement Availability Pay Act of 1994 ("LEAP"), 5 U.S.C. § 5545a, which became effective on October 30, 1994. Plaintiffs claim entitlement to such in-

---

1. The Court grants amici's motion for leave to file a brief amici curiae.

crease on the basis of the "equalization provision" of the DCRA, D.C.Code § 4–605(c), which grants an increase in retirement benefits to retirees when active duty employees receive salary increases. Secret Service criminal investigators who retired after the effective date of LEAP have LEAP pay figured into their retirement annuities.

This is not the first time the Court has addressed this issue. Plaintiffs brought the same claim before the Court in *Floyd v. District of Columbia*, 941 F.Supp. 164 (D.D.C.1996) (*Floyd I*), and the Court granted summary judgment in favor of plaintiffs. The Court of Appeals vacated the Court's decision on jurisdictional grounds only, finding that the Court lacked jurisdiction to hear the case in the absence of any reviewable agency action by the federal defendants that could constitute a waiver of sovereign immunity. *Floyd v. District of Columbia*, 129 F.3d 152 (D.C.Cir.1997) (*Floyd II*).

■ After *Floyd II* was decided, Nancy Killefer, Chief Financial Officer of the U.S. Department of the Treasury, notified Earl Cabbell, Interim Chief Financial Officer of the District of Columbia, by letter dated December 9, 1998, of the Department of Treasury's position that LEAP should not be included in calculations for plaintiffs' retirement benefits under the DCRA's equalization provision. The letter was intended to meet the requirements of the Administrative Procedure Act, 5 U.S.C. § 702, and to specifically afford the plaintiffs the right to contest the government's decision on a substantive basis. The federal defendants are to be commended for this action. It is refreshing that the government has decided not to hide behind its often used litigation iron curtain that precludes many of this nation's citizens from having their legitimate grievances heard. A government of the people, by the people, and for the people should not be fearful to decide citizen cases on their merits.

The federal defendants having waived sovereign immunity under the Administrative Procedure Act, 5 U.S.C. § 702, the Court has jurisdiction to review the case that the Court of Appeals found lacking in *Floyd II*. *Bowen v. Massachusetts*, 487 U.S. 879, 891–92, 108 S.Ct. 2722, 2730–31, 101 L.Ed.2d 749 (1988); *Floyd II*, 129 F.3d at 156. Indeed, at this point no jurisdictional challenge has been advanced by the defendants.

## ANALYSIS AND DECISION

### A. *Summary Judgment Standards*

Pursuant to Rule 56(c) of the Fed.R.Civ. P., summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In this case, there are no issues of material fact and the issue before the Court is solely one of law.

### B. *Applicability of the "Equalization Provision" to LEAP*

The DCRA's "equalization provision" provides as follows:

> Each individual retired from active service and entitled to receive a pension relief allowance or retirement compensation under §§ 4–607 to 4–630 shall be entitled to receive, without making application therefor, with respect to each increase in salary, granted by any law which takes effect after the effective date of the District of Columbia Police and Firemen's Salary Act Amendments of 1972, to which he would be entitled if he were in active service, an increase in his pension relief allowance or retirement compensation computed as follows: His pension relief allowance or retirement compensation shall be increased by an amount equal to the product of such allowance or compensation and the per centum increase made by such law in the scheduled rate of compensation to which he would be entitled if he were in

active service on the effective date of such increase in salary.

D.C.Code § 4–605(c).

Under general principles of statutory construction, the Court is required to interpret the DCRA provision according to its plain terms. *See American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). As the Court found in *Floyd I*, the plain terms of the DCRA require each covered retiree to "receive commensurate pay for 'each increase in salary, granted by any law ... to which he would be entitled if he were in active service.' " 941 F.Supp. at 167 (quoting D.C.Code § 4–605(c)). The issue here, as it was in *Floyd I*, is whether LEAP constitutes an "increase in salary" to which plaintiffs would be entitled if they were in active service.

Under the terms of LEAP, federal criminal investigators, including Secret Service employees, are granted availability pay. The statute provides in relevant part as follows:

(h) Availability pay under this section shall be—

(1) 25 percent of the rate of basic pay for the position; and

(2) treated as part of the basic pay for purposes of—

(A) sections 5595(c) [severance pay], 8114(e) [Civil Service Retirement System], 8331(3) [Federal Employees' Retirement System], and 8704(c) [Group Insurance]; and

(B) such other purposes as may be expressly provided for by law or as the Office of Personnel Management may by regulation prescribe.

5 U.S.C. § 5545a(h).

■ The Court found in *Floyd I* and in *Lanier v. District of Columbia*, 871 F.Supp. 20 (D.D.C.1994), that the term "salary" as used in § 4–605(c) includes any increase in the amount an employee receives in pay. *Floyd I*, 941 F.Supp. at 167; *Lanier*, 871 F.Supp. at 22. By its very terms, LEAP availability pay amounts to a 25 percent increase in salary for federal criminal investigators. It is clear to the Court that LEAP availability pay constitutes an "increase in salary" under the terms of the DCRA. *Floyd I*, 941 F.Supp. at 167; *see Lanier*, 871 F.Supp. at 22.

The federal defendants contend that the "equalization provision" of the DCRA does not apply to LEAP pay.[2] First, they argue that under D.C.Code § 4–605(c) LEAP pay cannot be an "entitlement" because of the inclusion of an annual certification requirement under 5545a(e).[3]

The Court finds that plaintiffs would have been entitled to LEAP pay if they had been employed on the effective date of LEAP. LEAP imposes essentially no new job demands on Secret Service criminal investigators in order to receive the entitlement and only precludes new Secret Service criminal investigators undergoing job training from receiving LEAP pay. Thus, except for trainees, LEAP is an across-the-board increase in hours and pay for all Secret Service criminal investiga-

2. Contrary to the federal defendants, defendant District of Columbia has interpreted the equalization provision as encompassing LEAP. According to the D.C. Office of Administration, "it appears law enforcement availability pay is a part of basic salary for DC-covered employees and, therefore, should be used in determining a member's average pay for retirement purposes." The D.C. Corporation Counsel has concurred with this conclusion.

3. Section 5545a(e)(1) provides in relevant part as follows: "Each criminal investigator receiving availability pay under this section and the appropriate supervisory officer, to be designated by the head of the agency, shall make an annual certification to the head of the agency that the investigator has met, and is expected to meet, the requirements of subsection (d)." Subsection (d) specifies that a criminal investigator is entitled to LEAP pay if the average number of unscheduled duty hours that the investigator works or is available to work each workday is equal to or greater than 2 hours.

tors to which all plaintiffs would be entitled.

The federal defendants argue that LEAP pay does not constitute "basic pay" under § 5545a(h)(2) for purposes of the DCRA nor "salary" as the term is used in the DCRA. Neither argument has merit. Defendants' reliance on the doctrine of *expressio unius est exclusio alterious* in support of their contention that its omission was intentional is misplaced. Although the DCRA is not specifically enumerated in § 5545a(h)(2)(A) as one of the statutory programs for which availability pay should be treated as basic pay, there is no evidence to suggest that Congress expressly considered and rejected LEAP pay's applicability as basic pay for purposes of the DCRA. Moreover, any such argument ignores the savings clause under § 5545a(h)(2)(B), which directs that availability pay shall serve as basic pay for "such any other purposes as may be expressly provided for by law." *See Floyd I,* 941 F.Supp. at 167 n. 2. The Court finds that the language of D.C.Code § 4–605(c) expressly provides for the inclusion of salary in the form of availability pay in DCRA-based annuity calculations.[4]

The federal defendants also argue that LEAP pay does not constitute "salary" as the term is used in D.C.Code § 4–605(c).[5] They contend that availability pay under LEAP is overtime pay, and not salary, because it replaced the prior program of "administratively uncontrollable overtime" ("AUO") pay. LEAP is not the equivalent of AUO and is not overtime. It merely recognizes that Secret Service criminal investigators have a different workday than other employees and that overtime "kicks in" only after the normal workday of 10 on-duty hours of work has been satisfied. *Floyd I,* 941 F.Supp. at 167 n. 3. Unlike AUO, LEAP applies whether or not a 10 hour day is actually worked. No clock needs to be punched and present criminal investigators receive their LEAP pay on the basis of a normal workday. Under these circumstances, premium pay under LEAP is salary and not overtime for purposes of the DCRA.

This finding is consistent with Congress' intent that LEAP availability pay be treated as guaranteed availability pay, not as overtime pay. *See* H.R.Conf.Rep. No. 103–729, at 56 (1994). Although LEAP pay abolished AUO for criminal investigators, it was not for the purpose of creating a new overtime system but rather to dismantle an administratively difficult and cumbersome program. 140 Cong.Rec. S15,266 (daily ed. Nov. 30, 1994) (statement of Sen. DeConcini).

It is most illuminating that the federal defendants have included LEAP pay in DCRA-based annuity calculations for current active duty Secret Service criminal investigators and for those who retired after the enactment of LEAP. By doing so, the federal agency responsible for implementing LEAP has already concluded that, with respect to post-LEAP Secret Service criminal investigators, LEAP pay is "salary" and not overtime pay for purposes of the DCRA and is to be included as part of basic pay, pursuant to

4. Because the Court finds that LEAP pay is basic pay for purposes of the DCRA as expressly provided by law, it need not address defendants' argument that the Office of Personnel Management regulations do not prescribe for such payments under to 5 U.S.C. § 5545a(h)(2)(B).

5. Defendants rely on the definition of "basic salary" as set out in D.C.Code § 4–607(6) for this argument, claiming that the statutory definition for "basic salary" explicitly excludes overtime pay. The Court notes that the D.C.Code does not provide a definition of

"salary" as used in § 4–605(c). As § 4–607 provides, the definitions set out in that section apply to §§ 4–607 to 4–630 of the D.C.Code, not to § 4–605(c). It is clear that had Congress intended to limit the scope of "salary" in § 4–605(c), it could have done so. Since Congress chose not to define "salary," the Court must turn to the common meaning of the term. *N.W. Enterprises, Inc. v. City of Houston,* 27 F.Supp.2d 754, 795 (S.D.Tex. 1998). The Court finds that LEAP pay fits squarely within the common meaning of "salary."

§ 5545a(h), for the calculation of DCRA-based retirement annuities.

The federal defendants' inconsistent treatment between pre- and post-LEAP employees under § 5545a cannot be rationalized. It is inconceivable that Congress, without saying so, intended the result that the federal defendants now advocate, that they be permitted to discriminate in their treatment of Secret Service criminal investigators based solely on the date of retirement.

Secret Service criminal investigators perform a valuable service to this country. It is clear that Congress recognized that these devoted individuals during their long and illustrious careers were overworked and underpaid and that they should be appropriately cared for during their retirement that they deservedly earned through their many years of devoted service to this nation's citizens. Plaintiffs, who retired before October 30, 1994 and are only 550 in number, clearly merit the inclusion of LEAP pay in the calculation of their retirement annuities.

An appropriate order accompanies this memorandum opinion.

### *ORDER*

It is hereby **ORDERED** that plaintiffs' motion for summary judgment be **GRANTED** and the federal defendants' motion for summary judgment be **DENIED;** it is further

**ORDERED** that defendants shall incorporate availability pay under the Law Enforcement Availability Pay Act of 1994, 5 U.S.C. § 5545a, in calculation of plaintiffs' annuity payments in accordance with the District of Columbia Police and Firefighters Retirement and Disability Act, D.C.Code § 4–605(c), retroactive to October 30, 1994 and on a prospective basis.